# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KHALIL SALEEM MILLS,** | Civil Action No. 22-6450 (SDW-JBC) |
| Plaintiff, | MEMORANDUM OPINION |
| v. | |
| **BOARD OF CHOSEN FREEHOLDERS, OSCAR AVILES, AND WELL PATH** | |
| Defendants. | |

**IT APPEARING THAT:**

1. On or about November 3, 2022, Plaintiff Khalil Saleem Mills, a pretrial detainee confined in Hudson County Correctional Facility in Kearny, New Jersey, filed a pro se civil rights complaint under 42 U.S.C. § 1983. (ECF No. 1).

2. This Court administratively terminated this action, subject to reopening, because Plaintiff's IFP application did not meet the requirements of 28 U.S.C. § 1915(a). (ECF No. 2). On December 8, 2022, Plaintiff filed a second IFP application. (ECF No. 3). Plaintiff's second IFP application is properly completed and establishes his financial eligibility to proceed without prepayment of the $350 filing fee. Therefore, Plaintiff's IFP application will be granted.

3. Because Plaintiff is granted *in forma pauperis* status, this Court is required to screen his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v.*

1

*Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

    4. In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

    5. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege

2

sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

6. The defendants named in the complaint are Hudson County Board of Chosen Freeholders; Oscar Aviles, Director of Hudson County Correctional Facility; and Well Path medical providers ("Well Path Medical Provider Defendants"). Plaintiff alleges that he was transferred from Cumberland County Jail to Hudson County Rehabilitation Center on April 28, 2022, and he discovered that the facility did not have a COVID-19 policy to protect inmates against spread of the virus. On June 8, 2022, at around 3:00 a.m., Plaintiff began having difficulty breathing and notified the officers on duty. The responding sergeant escorted Plaintiff to the medical department. Plaintiff, who has asthma, asked for treatment with a nebulizer. Instead, he was given an albuterol asthma pump, which did not help. He asked for a nebulizer again, and his request was granted. He also asked for a COVID test. Two days later, Plaintiff was tested for COVID, and on June 11, 2022, the results came back positive. Plaintiff was moved to an unsanitary quarantine cell for ten days. During quarantine, his temperature was checked. He was not allowed on court trips. He was not retested before his quarantine ended.

Upon leaving quarantine, Plaintiff requested a change of clothing, wash cloth, towel, and bedding, but his request was denied. Plaintiff tested positive for COVID-19 again, although it is not clear when this happened. He discovered that other inmates in his housing unit had also tested positive. Plaintiff alleges that he could not exercise to improve his strength because the gym was not sterilized. Another inmate in his housing unit tested positive for a staph infection, MRSA.[1] Plaintiff complained for two weeks to medical staff about his potential exposure to MRSA before he was moved to another housing unit. In his new housing unit, the showers were moldy and

---

[1] Plaintiff described the staph infection as "mercer," which this Court construes as MRSA.

unsafe for use. For relief, Plaintiff seeks damages based on his exposure to an unsafe environment, in violation of his right to due process under the Fourteenth Amendment.

7. Plaintiff's claim that the Board of Chosen Freeholders and Director Oscar Aviles failed to put in place a COVID-19 policy to protect inmates from spread of the virus is inconsistent with his allegation that he was placed in quarantine when he tested positive for COVID-19. Thus, this Court will construe Plaintiff's claim as alleging the facility did not have an *effective* COVID-19 policy. Specifically, Plaintiff alleged that: (1) he was returned to his unit and not tested for two days after he requested a COVID test; (2) his quarantine cell was unsanitary; (3) he was not retested for COVID-19 before his quarantine ended; (3) he was not provided clean laundry after ten days in quarantine; and (4) after his quarantine, he tested positive for COVID-19 again and discovered that other inmates in his housing unit were COVID-positive.

8. Substantive due process precludes punishment of detainees before they are adjudicated guilty. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020) (citing *Hubbard v. Taylor* ("*Hubbard II*"), 538 F.3d 229, 231 (3d Cir. 2008)). The key question in determining whether conditions of confinement violate a pretrial detainee's right to be free from punishment is whether the challenged conditions "are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Id.* at 326 (quoting *Hubbard II*, 538 F.3d at 232) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). If detainees "are subject to conditions unrelated to a legitimate governmental objective," courts "may infer 'that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon detainees qua detainees.'" *Id.*, quoting *E.D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019) (quoting *Hubbard II*, 538 F.3d at 232)). To make this determination, courts must consider the totality of the conditions of confinement, which includes "any genuine privations or hardship over an extended period of time, and whether

conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Hope*, 972 F.3d at 326 (quoting *Hubbard v. Taylor* ("*Hubbard I*")*,* 399 F.3d 150, 159–160 (3d Cir. 2005); *see, e.g.*, *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 995–96 (3d Cir. 1983)). In determining whether conditions of detention are excessive in relation to their legitimate purpose, courts must recognize the legitimate objectives of detention and "difficulties of managing a detention facility." *Id.* (citing *Hubbard II*, 538 F.3d at 233). Courts must ordinarily "defer to administrators on matters of correctional facility administration "not merely because the administrator ordinarily will ... have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government not the Judicial." *Id.* at 326-27 (quoting *Bell*, 441 U.S. at 520 (alteration in original)).

    9. Because the Government has an interest in incarcerating a person who is charged with a crime to ensure his presence at trial, *Bell*, 441 U.S. at 534, this Court begins the Fourteenth Amendment due process analysis by considering whether Plaintiff has alleged any genuine privations or hardship over an extended period of time. Plaintiff was transferred to Hudson County Correctional Facility on April 28, 2022, and he was placed in quarantine for ten days beginning on June 8, 2022, after he tested positive for COVID-19. Plaintiff alleges his cell was unsanitary, and he was not provided with clean laundry when he left quarantine. Plaintiff tested positive for COVID-19 again, and he learned that other inmates in his housing area had tested positive for COVID-19, and one inmate tested positive for MRSA. Plaintiff could not exercise in the gym to regain his strength, because it was not sterilized. When Plaintiff was moved to another housing unit, the showers were moldy. Plaintiff does not allege these conditions existed for the purpose of punishment. Based on Plaintiff's allegation that he suffered from asthma and had difficulty

breathing as a result of having COVID-19, which he contracted twice within less than one year, this Court concludes that Plaintiff suffered from a genuine hardship in detention. This Court also recognizes the legitimate government interests in detaining those charged with crimes to ensure their attendance at trial, and in managing detention facilities during a COVID-19 pandemic. The question, then, is whether the conditions alleged were excessive to the legitimate government interests. As described, they were not.

      Based on Plaintiff's allegations, Hudson County Correctional Facility had a COVID-19 testing policy, quarantine policy, and treatment policy. The unsanitary conditions alleged, which Plaintiff only vaguely described, are not excessive in light of the difficulties in operating a detention facility during a pandemic, where staff is likely stretched thin due to illness and extra duties during the pandemic. Therefore, this Court will dismiss Plaintiff's Fourteenth Amendment conditions of confinement claims against the Board of Chosen Freeholders and Oscar Aviles without prejudice. *See Bell*, 441 U.S. at 549 (holding courts must give substantial deference to correction officials in the administration of detention facilities). Furthermore, Plaintiff has not alleged that the Board of Chosen Freeholders or Oscar Aviles failed to implement a policy to prevent the spread of MRSA in the facility. Therefore, this Court will address the MRSA claim as it pertains to the Well Path Medical Provider Defendants.

      10. Plaintiff alleges that unidentified Well Path medical providers at Hudson County Correctional Facility delayed action on his grievances for two weeks when he complained about living in the same housing unit as an inmate who tested positive for MRSA. Plaintiff was not seeking medical care but, rather, protection from exposure to an infectious disease.[2] Therefore,

---

[2] To the extent that Plaintiff may be alleging the Well Path Medical Provider Defendants failed to provide him with adequate medical care because his asthma was ineffectively treated with albuterol before his request for a nebulizer was granted, this claim fails because disagreement with

this too is a Fourteenth Amendment conditions of confinement claim. Plaintiff has not described his proximity to the inmate who was infected by MRSA nor whether any efforts were made to prevent the spread of MRSA within the housing unit. Without more information, this Court cannot conclude that the inmate's presence posed a risk to Plaintiff's health that was excessive in light of the medical staff's legitimate interest in providing care to all pretrial detainees in the facility during a pandemic. This claim will be dismissed without prejudice for failure to state a claim.

      11. In conclusion, this Court will grant Plaintiff's IFP application but dismiss his complaint without prejudice for failure to state a claim upon which relief may be granted. Plaintiff is granted leave to file an amended complaint.

      An appropriate order follows.

Dated: January 3, 2023

                                                          Hon. Susan D. Wigenton,
                                                          United States District Judge

---

the medical treatment provided does not constitute deliberate indifference to a serious medical need. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (holding the Fourteenth Amendment Due Process standard for inadequate medical care by a pretrial detainee is evaluated under the same standard as an Eighth Amendment claim by a prisoner, deliberate indifference to a serious medical need); *Edwards v. Northampton Cnty.*, 663 F. App'x 132, 137 (3d Cir. 2016) (stating that neither disagreement with medical treatment, nor the alleged inadequacy of treatment provided, raises an inference of deliberate indifference to a serious medical need).